IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| AUBURN DEPOT, LLC, <br> doing business as The Depot, <br><br> Plaintiff, <br><br> v. <br><br> THE CINCINNATI INSURANCE CO., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Case No. 3:20-cv-384-ECM <br> ) (WO) <br> ) <br> ) <br> ) |

**MEMORANDUM OPINION and ORDER**

On June 5, 2020, the Plaintiff Auburn Depot, LLC, doing business as The Depot ("Auburn Depot" or "the Plaintiff") initiated this lawsuit against The Cincinnati Insurance Company ("Cincinnati Insurance" or "the Defendant"). (Doc. 1). On July 27, 2020, the Plaintiff filed an amended complaint (doc. 26) seeking declaratory relief against Cincinnati Insurance, asking the Court to affirm that coverage exists under the policy's Business Income, Extra Expense and Civil Authority Order provisions. (*Id*. at 17–19).[1] After it was forced to suspend its business operations as the result of the COVID-19 global pandemic, Auburn Depot made a claim with Cincinnati Insurance under its all-risk insurance policy for business income, extra expenses, and civil authority order coverage. (*Id*. at 16). According to Auburn Depot, orders issued by the state health officer constituted Civil Authority Orders that prohibited Auburn Depot from accessing its property. (*Id*. at 12–

---

[1] The Court will refer to the page numbers generated by CM/ECF.

13). Cincinnati Insurance agreed to investigate Auburn Depot's claim but when the complaint was filed, had not offered coverage under the policy. This action followed.

Now pending before the Court is the Defendant's motion to dismiss for failure to state a claim. (Doc. 33). According to Cincinnati Insurance, the Plaintiff's all-risk insurance policy only provides coverage for loss to the Covered Property that involves "direct physical loss or damage" to the property, and because Auburn Depot does not allege the COVID-19 pandemic or the virus caused physical damage to the covered property, it has not sustained a covered loss under the policy, and thus no coverage is available. Cincinnati Insurance also asserts that the Civil Authority provision is inapplicable because the Plaintiff has failed to allege a covered loss sufficient to trigger coverage under the policy. The Plaintiff filed a response, and the motion is ripe for resolution. For the reasons that follow, the motion to dismiss the amended complaint is due to be GRANTED.

## I. JURISDICTION

The Court exercises federal subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332. The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations to support both.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U. S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U. S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679 (alteration in original) (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U. S. at 555, 570. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678. Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

### III. DISCUSSION

The facts, taken in a light most favorable to the non-movant, are as follows.[2] Auburn Depot is a "restaurant with seafood eatery and a wood-fired grill and bar located in Auburn, Alabama." (Doc. 26 at 1). Auburn Depot contracted with Cincinnati Insurance to provide

---

[2] Auburn Depot attached the insurance policy, state health orders and correspondence between it and Cincinnati Insurance to its amended complaint. In general, when the Court considers matters outside the pleadings on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the motion is converted into a motion for summary judgment pursuant to Fed. R. Civ. P. 56. However, the Court may consider exhibits attached to the amended complaint if the documents are "(1) central to the plaintiff's claim; and (2) undisputed." *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). Both Auburn Depot and Cincinnati Insurance reference the documents which are central to Auburn Depot's claims, and neither party challenges the authenticity of the documents. Consequently, the Court will consider those exhibits when ruling on the motion to dismiss.

an "all-risks" insurance policy which was in effect in March 2020. Since March 28, 2020, pursuant to orders issued by Alabama State Health Officer Dr. Scott Harris limiting access to businesses, Auburn Depot's operations have been reduced or suspended. Auburn Depot made a claim under its insurance policy, seeking payment for business income and extra expenses pursuant to the civil authority provision because the state closure orders prohibited it from accessing its property. Cincinnati Insurance issued Auburn Depot a reservation of rights letter and instituted an investigation to determine coverage because Auburn Depot had not suffered any "direct physical loss or damage" to its premises.

Auburn Depot's insurance policy provides the following coverage:

> We will pay for the actual loss of "Business Income" . . . you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss.

(Doc. 26-1 at 20).

The policy also provides coverage for extra expenses when the "Business Income" coverage applies. (*Id*. at 21). In addition, the policy provides, in relevant part, "Civil Authority" coverage.

> When a Covered Cause of Loss causes damage to property other than Covered Property at a "premises," we will pay for the actual loss of "Business Income" and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the "premises," provided that both of the following apply:
>
> (a) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and

>    (b) The action of the civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(*Id*.).

The policy defines loss as "accidental physical loss or accidental physical damage." (*Id*. at 40). "Covered Cause of Loss" is defined as "direct 'loss' unless the 'loss' is excluded or limited in this Coverage Part." (*Id.* at 7). While the policy contains a fungi and bacteria exclusion, (*id*. at 9–10), it does not contain a virus exclusion.

According to Cincinnati Insurance, the policy does not provide Auburn Depot coverage for losses that resulted from the state health orders mandating reduced or suspended operations due to the COVID-19 pandemic because Auburn Depot did not suffer a "direct physical loss" under the policy. Auburn Depot responds that it has sufficiently alleged that it suffered a direct physical loss because as a result of the state closure orders, it was unable to access its property and the property was rendered unusable.

There is no dispute that Alabama law applies in this diversity action. Under Alabama law, the burden is on the Plaintiff as the insured to demonstrate that there is coverage under the policy. *See Jordan v. National Accident. Ins. Underwriters, Inc.,* 922 F.2d 732, 735 (11th Cir.1991). In addition, "Alabama law requires courts to construe the terms of an insurance policy according to their ordinary meaning." *Robinson v. Liberty Mut. Ins. Co.*, 958 F.3d 1137, 1139 (11th Cir. 2020).

5

In order to be entitled to coverage, Auburn Depot must establish that it suffered a covered loss under the policy. To make that determination, the Court looks to the language of the policy determine what constitutes a "loss."

> "In Alabama, the interpretation of a contract, including an insurance contract, is a question of law reviewed *de novo*." *Twin City Fire Ins. Co. v. Ohio Cas. Ins. Co.*, 480 F.3d 1254, 1258 (11th Cir. 2007). Alabama courts "enforce the insurance policy as written if the terms are unambiguous." *Safeway Ins. Co. of Ala., Inc. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005). Alabama courts give the terms the meaning that "a reasonably prudent person applying for insurance would have understood the term[s] to mean." *Id.* at 1144 (alteration adopted) (internal quotation marks omitted). That is, Alabama courts ordinarily do "not define words ... based on technical or legal terms." *Id.* at 1143; *see also Liggans R.V. Ctr. v. John Deere Ins. Co.*, 575 So. 2d 567, 571 (Ala. 1991); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 6, at 69 (2012) ("Words are to be understood in their ordinary, everyday meanings—unless the context indicates that they bear a technical sense."). To be sure, when construing "exceptions to coverage," Alabama courts construe them "as narrowly as possible in order to provide maximum coverage." *Johnson v. Allstate Ins. Co.*, 505 So. 2d 362, 365 (Ala. 1987); *see also Porterfield v. Audubon Indem. Co.*, 856 So. 2d 789, 806 (Ala. 2002). But those courts remain careful not "to rewrite policies to provide coverage not intended by the parties." *Johnson*, 505 So. 2d at 365.

*Robinson,* 958 F.3d at 1140.

Moreover, "[a]n insurance policy must be read as a whole. The provisions of the policy cannot be read in isolation, but, instead, each provision must be read in context with all other provisions." *Cowart v. GEICO Cas. Co.*, 296 So. 3d 266, 270 (Ala. 2019) (quoting *Allstate Ins. Co. v. Hardnett*, 763 So. 2d 963, 965 (Ala. 2000)).

Applying these principles, the Court turns to the language of the insurance policy. The policy provides coverage for any "direct 'loss' to Covered Property at the 'premises' caused by or resulting from any Covered Cause of Loss." (Doc. 26-1 at 5). The policy then defines "Loss" as "accidental physical loss or accidental physical damage." (*Id*. at 40). As another district court so aptly put it, "[t]he policy's definition of 'loss' is circular." *Dukes Clothing, LLC, v. The Cincinnati Ins. Co.*, 2021 WL 1791488 (N.D. Ala. May 5, 2021). Because the policy uses both "loss" and "damage," the Court reads these terms to have "distinct meanings so that neither term is superfluous." *Id*. at *3. To determine their distinct meanings, the Court looks to the ordinary meaning of the words. "And a dictionary definition is an assertion of th[e] very meaning that an ordinary person would give a particular word." *Robinson*, 958 F.3d at 1140 (internal quotations omitted) (bracket in original). The definition of loss includes "ruin, destruction; the condition of being. . . destroyed or ruined." Loss, Oxford English Dictionary, available at www.oed.com. Damage is defined as "loss or detriment caused by hurt or injury . . . physical injury to a thing, such as impairs its value or usefulness." Damage, Oxford English Dictionary, *supra*. Thus, the Court "interprets 'damage' to be a lesser harm than 'loss' which results in total ruin." *Dukes Clothing*, 2021 WL 1791488 at *3. *See also Woolsworth, LLC v. Cincinnati Ins. Co*., 2021 WL 1424356, *4 (N.D. Ala. Apr. 15, 2021) ("In other words, a person of ordinary understanding would read the policy to cover a spectrum of property damage that ranges from lesser harm (*i.e.* physical damage) to total ruin (*i.e.* physical loss)."). Thus, to establish a covered loss under the policy, Auburn Depot must allege some direct physical loss or damage to the covered property.

The Plaintiff argues that it has sufficiently alleged a "direct physical loss" to its insured premises because as the result of the COVID-19 pandemic, Auburn Depot "lost the functionality of its property for business purposes." (Doc. 26 at 15, para. 65). The Plaintiff asserts that "[t]he COVID-19 pandemic caused direct physical loss of or damage to the Covered Property under the Policy by denying use of, impairing the function of, and damaging the Covered Property as well as by causing a necessary suspension of operations during a period of restoration." (*Id.* at 9, para. 38). Auburn Depot alleges that "[l]osses caused by the COVID-19 pandemic and the related Civil Authority Orders issued by local, state, and federal authorities triggered the Business Income, Extra Expense, and Civil Authority provisions of the Policy." (*Id*. at 7, para. 28). In support of these allegations, Auburn Depot asserts the following facts:

- "The virus that causes COVID-19 remains stable and transmittable in aerosols for up to three hours, four hours on copper, up to 24 hours on cardboard and up to two to three days on plastic and stainless steel."

- "The global Coronavirus pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials, *i.e.* "fomites," for up to twenty-eight (28) days."

- "Undoubtedly, COVID-19 was physically present on property surfaces throughout Alabama, including Auburn, where Plaintiff operates its business."

- "Because people—staff, customers, community members, and others— frequent all areas of Plaintiff's property, there is an ever-present risk that COVID-19 is present at the Covered Property and would continue to be present if the business remained open to the public."

- "If Plaintiff's business were to have remained open to the public, the Covered Property would be perpetually exposed to COVID-19."

(*Id*. at 7–8, 13–14).

The Plaintiff further alleges that the "threat" of COVID-19, and the "ever-present risk that COVID-19 is present at the Covered Property" is sufficient to constitute direct physical loss or damage to the property. *See Id*. at 13, paras. 58–59.

There are no allegations in the complaint that the virus physically alters the covered property. "While COVID-19 particles are a physical manifestation of the virus, [Auburn Depot] has not alleged that they caused any physical harm to the property within the meaning of the policy." *Dukes Clothing*, 2021 WL 1791488 at *3. Any transmittal of the virus is to individuals who may be on the property, but there is no allegation that the virus is transmitted to and transforms the property itself. Thus, any physical loss suffered by the transmission of the virus is to individuals who contract the virus. The Covered Property itself suffers no physical harm or damage. In other words, the Covered Property remains unchanged by any exposure to the virus.

In reviewing the amended complaint, this Court must disregard legal conclusions, such as the allegation that the pandemic "is physically impacting the Covered Property," and consider only the properly pleaded facts. *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013). Beyond its conclusory assertion that that the COVID-19 pandemic renders its property unusable, there are no allegations in the complaint that the virus physically alters the property. Thus, even if the virus was physically present in the building, the Plaintiff makes no allegation that the virus causes physical damage to the property. Because Auburn Depot has not alleged sufficient facts to establish that the Covered Property suffered any physical loss or physical damage, the Court concludes that Auburn Depot has failed to state a claim that the insurance policy provides coverage under these circumstances. *See*

9

*Gilreath Family & Cosmetic Dentistry, Inc. v. Cincinnati Ins. Co.*, --- F. App'x ---, 2021 WL 3870697 (11th Cir. Aug. 31, 2021).³

  A review of other language in the policy confirms that the policy contemplates actual physical harm to the covered premises to constitute direct physical loss or damage. The Business Income and Extra Expense provision provides coverage for business suspension during a "period of restoration." (Doc. 26-1 at 20–21). The "period of restoration" is defined as beginning "at the time of direct 'loss'" and ending on the earlier date that the "property at the 'premises' should be repaired, rebuilt or replaced . . . or when business is resumed at a new permanent location." (*Id*. at 40–41). Thus, direct physical loss or damage envisions harm that requires repair, rebuilding, or replacement.

  For the reasons as stated, the Court concludes that the Plaintiff fails to allege sufficient facts to demonstrate that the covered property suffered any physical damage which would qualify as a loss under the policy.

  Auburn Depot claims that "the COVID-19 pandemic and the resultant Civil Authority Orders caused numerous businesses' properties throughout Auburn, Alabama (including the area surrounding Plaintiff's business) to lose their intended uses and rendered these properties unsafe, uninhabitable, or unfit for occupancy." (Doc. 26 at 13, para. 56). Thus, the Plaintiff claims that "the COVID-19 pandemic caused direct physical loss or damage to property other than Plaintiff's." (*Id*. at para. 57). To the extent that

---

³ While the Court recognizes that *Gilreath Fam.*, *supra*, is an unpublished opinion and not binding, the Court finds its analysis to be persuasive.

Auburn Depot asserts it is entitled to coverage under the civil authority provision, that provision is only applicable if Auburn Depot first alleges a loss.  Because Auburn Depot fails to allege facts sufficient to establish coverage under the policy for loss, it has failed to meet its burden of establishing entitlement to coverage under the civil authority provision.

The Plaintiff seeks declaratory relief pursuant to 28 U.S.C. § 2201.  A federal court may only issue a declaratory judgment, however, if an actual controversy exists between the parties. *Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210 (11th Cir. 2019). Here, no actual controversy exists between the parties because the Plaintiff fails to establish, as a matter of law, that it is entitled to coverage under the policy, and thus, the Plaintiff is not entitled to declaratory relief.  Thus, the Defendant's motion to dismiss is due to be granted.

The Court also concludes that any amendment to the complaint at this juncture would be futile because Auburn Depot can allege no facts, as a matter of law, that would establish that the COVID-19 pandemic or virus physically damaged or altered the covered premises such that would invoke coverage under the policy.  *See L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1333 (11th Cir. 2020) ("Leave to amend would be futile if an amended complaint would still fail at the motion-to-dismiss . . . stage.").

## IV.   CONCLUSION

Accordingly, for the reasons discussed, and for good cause, it is

ORDERED that the Defendant's motion to dismiss (doc. 33) is GRANTED and the amended complaint is DISMISSED without prejudice for failure to state a claim upon which relief can be granted.

A separate final judgment will be entered.

Done this 28th day of September, 2021.

                                          /s/ Emily C. Marks
                                          EMILY C. MARKS
                                          CHIEF UNITED STATES DISTRICT JUDGE